We have five cases on the calendar this afternoon. Three government employee appeals, two of which will be submitted in the briefs and not argued. Tax case from the Court of Federal Claims and Patent case. First case, the tax case, John Hinckley and Pamela, not Hinckley, but Hinck, Pamela, Hinck v. United States, 05-5099, Ms. Womack. Your Honors, may it please the Court. I'm Teresa Womack. I'm here on behalf of the Hincks. This is a plain vanilla tax refund case requesting an abatement and refund of excessive interest that was accrued due to IRS errors and delays during the course of an examination. Plain vanilla? Plain vanilla, Your Honor. I have the impression that this is almost a case of first impression, at least in our circuit. Is that correct? Well, the statute that's at issue, 6404, has been held to not be justiciable in several other jurisdictions previously. In the Fifth Circuit? It was held to be justiciable in the Fifth Circuit under Bell. There was a prior ten-year history before Bell and before some 1996 amendments to 6404 that held that the district courts and the circuit courts had jurisdiction under their inherent ability to hear refund actions for any tax penalty or any sum that's excessive or wrongfully collected. However, those courts, Selman and Horton Homes, determined that the statute 6404 was drawn in such broad terms that it was impossible to apply it and that it was not justiciable. Now, we're reviewing this case under the language of 6404E prior to the amendment. No, we're looking at 6404E post-amendments, 1996 amendments. In 1996, after giving— But isn't Judge Lynn correct that the amendment to the standards in that section, the addition of the word reasonable and the addition of managerial, are amendments that don't apply to this case, right? That is correct, Your Honor. They do not apply to this case, but they do not affect and do not add anything to the analysis for what the tests and standards are. It's our contention that the standards for what types of errors and delays are reviewable exist and is discernible under the pre-1996 amendments, and the tax court uses those standards. Your theory is that Congress, by making these issues reviewable in the tax court, has determined that they're justiciable. That's exactly right. And let's assume for the moment, hypothetically, that you're correct about that, okay? You still have a problem as to whether Congress intended the tax court jurisdiction to be exclusive and intended only to benefit small net worth taxpayers. In the case of individuals, $2 million. In the case of other taxpayers, $7 million. So how do you get around that? Didn't Congress want this benefit of reviewability of the refusal to abate only to be available to small net worth taxpayers and doesn't allowing a refund suit effectively evade that limitation? Well, there's no indication Congress meant to limit it to small net worth individuals in the legislative history. Now, there is a provision in the statute. I don't understand that. I mean, because it says specifically in the statute that, you know, you can only go to the tax court if you're a small net worth individual. And that was taken from a couple of other similar provisions appearing in a couple of other federal statutes, Equal Access to Justice Act and so on. Why doesn't the very presence of that provision in the statute indicate that Congress only wanted small net worth taxpayers to get the advantage? I understand, Your Honor, because there is a larger issue here. There is an independent source of jurisdiction for tax refund actions. Whether it's 1346 or 1491, as the court can see from the opinion, there's a question about that. But there is an independent, outside of the tax court, internal revenue code tax court jurisdiction, jurisdictional provision, 1346 and 1491, that gives the district courts and the courts of federal claims refund jurisdiction over any claim that's based on recovery of an excessive sum which the tax court— Well, Congress didn't change those provisions. In fact, it indicated that it didn't intend to change those provisions. But I keep coming back to the question I was asking before. Let's assume that they only wanted small net worth taxpayers to take advantage of this, doesn't allowing refunds evade that. Well, if there's an existing source of jurisdiction to the courts, and in this case there is, 1346 and 1491, I'll quote Bowen here. Without an express exclusive language in the code, the tax court's jurisdiction is only exclusive to the intent Congress has not granted any other court authority to hear the same claim. That authority to hear the claim already exists in 1346 and 1491. And it's established that a court's— But you're not addressing my question. My question is Congress included a specific limitation in here. Well, Your Honor, you do need to look at this. And if we were to construe these general provisions which were unamended in this legislation to allow high net worth taxpayers to sue for refunds, wouldn't that directly defeat the Congressional purpose? Well, if we deny high net worth individuals opportunity to sue, then they're being denied a due process claim or a right to due process that is not announced in the statute and is not announced in the statutory history. There's nothing in the history to indicate that the congressman to— But the due process— I can see denying them for—I'm sorry. Ms. Barnack, the due process issue isn't before us. Isn't it understood that before 6404H was enacted, there was no appellate jurisdiction on abatement? No, Your Honor. That's a gross overstatement. Selman and Horton Holmes very clearly, the first two cases, the 11th Circuit and the 10th Circuit, to look at this, very clearly held that there was 1346 and 1491 jurisdiction over these refund claims based on interest abatement. But they weren't justiciable due to the broad nature of the act. Are you saying that the legislative history is incorrect? The legislative history for the amendments, the 1996 amendments? Yes. I'm suggesting that there are two sentences in the legislative history that are at best ambiguous to continue to hold that the district courts and the court of federal claims cannot exercise their admitted jurisdiction. Like I said, 10th Circuit and 11th Circuit found that they could exercise their jurisdiction. And the first sentence in the legislative history that federal district courts or federal courts don't have jurisdiction is a following, an overbroad, an oversimplification that followed Selman and Horton Holmes. After Selman and Horton Holmes, there was another case, Argebright. Argebright ignored the underlying analysis, the great iceberg-like analysis that followed the initial determination that the courts did have jurisdiction and shorthanded it to say courts don't have jurisdiction, as opposed to the correct determination would be have jurisdiction but are precluded from making their determinations because of a lack of perceivable standard for administering the standard. Now, that Argebright shorthanded overstatement became the statement in the law. And you'll see every case after that says that the courts lack jurisdiction, and that's not the initial determination that was made. And it's just not defensible when you look at the language of 1346 and 1491. Are these 10th and 11th Circuit cases in your brief? Yes, they are. Selman and Horton Holmes are discussed at length. Okay. With regard to the second statement in the legislative history about no inference is intended, it goes to your question, Your Honor. Like I said, Owen says it's not permissible to overturn existing grants of jurisdiction just because some other grant of jurisdiction doesn't say the word exclusive in it. Now, that goes to the structure. Why would Congress possibly want to limit the tax court to small net worth taxpayers but allow all other taxpayers to sue for refund suits? Well, there have traditionally in the past been dollar limitations, amount of controversy limitations on refund suits. The old history, the old 1491 limited it to $10,000 actions or not, and that the other people— I am speculating, Your Honor, because there is absolutely nothing in the legislative history to back this up. But there have been limits in the past. But in this situation, the approach suggested by Your Honor would leave high net worth individuals without any access to courts to attempt to obtain an abatement or a refund of interest. Well, isn't that true—I'm sorry. Isn't that true under the Equal Access to Justice Act that only small net worth taxpayers can take advantage of it? Well, you're right, Your Honor. But even without the $2 million limitation, the issue becomes does the tax court have exclusive jurisdiction. And in the grand scheme of tax controversy jurisdiction, that just isn't borne out by the difference between 7442 that parses out discrete tax court jurisdiction in the Internal Revenue Code and the comparatively broad jurisdiction that's given under 1346 and 1491. I see I'm in my rebuttal time, but I would like to make one point there. It's two totally different sources of authority. Congress knows how to say exclusive. If it meant to say exclusive, it does in the tax code, Your Honor. Let's see. If you'll look under Section 7429B under Jeopardy Assessments, it says exclusive jurisdiction in the tax court. Exclusive is the word that's there. It's not in 6404. Same with unauthorized disclosures. Section 6110J gives the Court of Federal Claims exclusive jurisdiction to hear cases for unauthorized disclosures. So Congress knows how to say exclusive if it means exclusive. And here there's no indication that Congress meant to totally do away with the existing jurisdiction that the courts had recognized prior. We'll pay the remainder of your time. Thank you. Ms. Houser. Thank you, Your Honor. Good afternoon. My name is Bethany Houser for the United States. This is a case about jurisdiction and justiciability, and the Court of Federal Claims opinion here turns on the insight that in this setting, jurisdiction and justiciability are mirror images of each other. The analysis is the same under these two. The result is that under 6404E1, which is the provision at issue here, we have an issue that's simply not justiciable. Well, but that's a little difficult, isn't it? When Congress said that it's justiciable in the tax court, didn't that indicate that Congress concluded that the underlying issues are justiciable? Well, Congress in 6404H makes 6404 issues appealable to the tax court. There are other provisions in 6404 which are justiciable. Well, but, I mean, what the Fifth Circuit said, and it seems to me that it has a lot of merit, that if the courts got it wrong in the Horton case earlier in saying that these issues were non-justiciable and said, okay, now they're justiciable, tax court, you have jurisdiction over these, how can other courts say that the issues are non-justiciable? Other courts may say, it's not our business to enforce this provision, but certainly the underlying issues are justiciable, aren't they? Well, as an initial matter, Congress did indicate that it did not mean to imply anything about whether there was jurisdiction in other courts by adding 6404. I understand, but as far as the tax court is concerned, these issues, Congress said, we're telling you these are justiciable, right? Congress said that there was jurisdiction. As you've been discussing, Selman and Horton Holmes suggested that they did have jurisdiction. I mean, you're not suggesting the tax court could say, well, Congress told us to adjudicate these issues, but we're going to say they're non-justiciable. We're going to follow these earlier cases. Could the tax court do that? If the statute does not articulate any standard according to which an issue can be determined by a court, if there's no judicially manageable standards, what else can the tax court do? So you're going to urge on the tax court that even though Congress specifically gave them jurisdiction over these claims, that they remain non-justiciable. Well, Congress specifically gave the tax—I wouldn't say it's specific to 6404E1. Congress gave the tax court jurisdiction over a broader category of claims that included 6404E1. I understand, but you're going to urge on the tax court that these particular issues about interest abatement remain non-justiciable, and the tax court should say, these are not justiciable, we can't do anything for you. Well, in fact, the tax court has not been able to articulate a standard in the 6404E1 cases, so it's not—what could the tax court do? How could— I mean, is that the position you're urging on the tax court, that the tax court can't do anything because the issues are non-justiciable in the tax court? Yes, that would be our position, in the tax court. And that position you've urged on the tax court? Well, the Department of Justice does not have the power in the tax court.  Most of the cases in the tax court have gone on the preliminary issues, which are clearly justiciable, things like, does the taxpayer fall within the net worth requirement, are the deadlines met, was this a ministerial act? Therefore, it hasn't been necessary in most of the tax court cases to reach the issue. You're not answering my question. There are—people are bringing these cases in the tax court, right? Right. They're arguing that the failure to grant interest abatement was unreasonable, right? And what is the IRS telling them? You can't do anything about it because the issues remain non-justiciable? Well, in the cases where the unreasonable standard, where unreasonableness is at issue, those are in for later tax years, and those would be justiciable. These are the tax years before the word reasonable was added to the standard. So your position is that before the word unreasonable was added, even in the tax court, it remained non-justiciable? I think that's the only fair reading of the Argybri line of cases, yes. Why don't you tell us why the tax court has exclusive jurisdiction? The tax court has exclusive jurisdiction, as you were discussing earlier, because in giving the tax court jurisdiction, Congress limited its jurisdiction in particular ways. It added a particular time limit. There's the net worth requirement, and it also limits the scope of review. By making this a particular process that applies in a particular way only to particular taxpayers, Congress wrote a statute that indicates, even though it does not expressly say, that jurisdiction should be exclusive in the tax court. What about the 10th and 11th Circuit holdings? I'm sorry, what about that? That your opponent cited as establishing that there was jurisdiction in the other district courts. Well, by adding 6404H, which would make the jurisdiction exclusive in the tax court. You're saying H withdrew jurisdiction from the other courts? I'm not sure that the other courts had jurisdiction in the first place. I realize they held that they did, but there's a sense in which justiciability acts as a sort of carve-out from jurisdiction. I mean, in the sense they had jurisdiction, but they couldn't exercise it. So, I'm not sure that it's actually withdrawing. I mean, did they have authority to do anything to those cases if the issue wasn't justiciable? Are you familiar with the 10th and 11th Circuit cases cited by your opponent? The Selman and Horton Holmes cases, yes. They say they have 1346 jurisdiction, but they can't act on the cases because they're not justiciable. And now you say that's withdrawn because of the enactment of 6404H. Yes, 6404H. It wasn't reviewable anywhere before, so it's difficult to say withdrawn. There was no right to review that disappeared, so it seems like a word that goes too far. Is what you're saying that the court doesn't have jurisdiction if the issue is non-justiciable? That's certainly what the Court of Federal Claims held in this case, that it doesn't have jurisdiction if the issue is non-justiciable. Well, what's your view? I mean, you have Horton and these other cases saying, well, we have jurisdiction, but it's not justiciable. Are you saying that they said, well, we have generally jurisdiction over this class of cases, but these particular kinds of cases we don't have jurisdiction over because they're non-justiciable? Is that what you're saying? Well, I think the idea of a general rule and an exception, if they have jurisdiction but the cases aren't justiciable, what can they do but dismiss them? Well, what's the answer to my question? Are you saying the justiciability, if something's non-justiciable, the court doesn't have jurisdiction? Well, I certainly don't want to say that about the Court of Federal Claims here. In the other cases, no, Selman and Horton Holmes found that they had jurisdiction, but that it wasn't justiciable. What I'm saying is, what does it mean to withdraw that no right to review has been removed by giving exclusive jurisdiction to the tax court in 6404H because the issue was not reviewable in other courts before, whether or not there was jurisdiction. Does that answer your question? Not really. Go ahead. All right. Actually, I think we've covered two issues that are here, the jurisdiction and justiciability and the exclusive jurisdiction in the tax court. Your position is affirmed. Yes, it is. Thank you very much. Thank you. As long as they're penalized, I didn't have time. Ms. Womack has a little rebuttal time. Just a little, two quick points here, Your Honor. In the fog of trying to ascertain the answer to your question, Your Honor, my co-counsel has pointed out. I hope the question wasn't a fog. What I'm really asking is when those courts said, and when courts generally say that something's not justiciable, are you saying that it's also not within our jurisdiction because it doesn't satisfy Article III? The other courts that have looked at that have held no, there's a clear distinction. Judge Allegra and Hink is the first judge to have reached that decision or that determination. What other courts, aside from Diehl, the Fifth Circuit case? Selman and Horton Homes reached the issue that you're addressing, Your Honor, about the justiciability versus jurisdiction issue. Okay. They initially determined there was jurisdiction, but because the statute was drawn in such broad terms, they couldn't address it. And this goes to a statement that was made by Ms. Hauser that the tax court cases haven't actually reached the meat of this argument about what are the standards. And that's not really true. I've read all of those tax court cases, and I can give you a couple of sites here where the tax court, of course, they are favorable in that the tax court applied the standards, found some errors and delays, and granted relief to the taxpayers. They weren't hung up on whether it was unreasonable or whether they had jurisdiction. One is Polnick. It's TC Memo 2003-297. And the other is Corison, 123 TC 202. And in those cases, the tax court looked to see what kinds of errors and delays are we looking at. Any error or delay? This is the IRS. They make a lot of errors and delays. And it's not just all. It's errors and delays in ministerial acts. Ministerial acts are defined as procedural or regulatory actions that they're required to take. And it's not even all of those procedural acts that they're supposed to take. It's only the ones now that are unreasonable. Under the previous standard, it was a higher standard, in our opinion, widely perceived as grossly unfair. So it's not just all errors and delays. The tax court reviews those cases for abuse of discretion, where the IRS abused its discretion. Now, there's a case that came out of this court, Murphy, back in 1993, that says an agency is bound to follow its own procedural regulations. And the test with regard to that is that the standard's inherent. A court may appropriately decide whether the agency followed the procedures because, by their nature, the procedures limit their discretion. The court's not called upon to exercise any discretion whether the procedures were followed in applying the facts to the statutory or regulatory standard. And with regard to the—so I'm saying that there are standards. You look at errors and delays for ministerial acts, and you review them for abuse of discretion. Abuse of discretion is the common law standard for reviewing agency actions. It's codified under the APA, which we agree doesn't apply here. But it is the common law standard of review for agency actions, and we urge the court to employ it here. And we're not asking you to take it out of the inapplicable 6404 amendments. We're just asking you to apply the law that you already have at your hands. Now, with regard to the net worth requirement, as Ms. Gladden has pointed out to me, it's entirely reasonable for the court to limit prepayment access to the tax court, prepayment under the $2 million net worth. But that's not the only thing the tax court has jurisdiction over. And what it does have jurisdiction over is very narrowly described. Wait, wait, wait. Okay. Let me finish my question. I'm sorry. Under this amendment, given the tax court jurisdiction, they have jurisdiction whether there's a prepayment and trying to get the interest back or whether you're trying to resist the effort by the IRS to collect the interest. It doesn't make any difference in that respect, does it? Oh, I think you've assumed too much, Your Honor. Tax court jurisdiction, unless it is specified in the tax code, I'll point you to Section 6214 of the tax code, is limited to prepayment jurisdiction unless Congress has expressly carved out postpayment jurisdiction or other jurisdiction. It has to be expressed explicit in the tax code, and it's not here. So there is a real question whether the tax court has postpayment jurisdiction over these 6404 cases. It's not been raised anywhere, but there's a real question about that. Are they adjudicating cases in which the interest has been paid? I haven't found one yet, Your Honor. You don't know? I don't know. Okay. Thank you, Ms. Womack. Thank you. I'll take the case on the submission.